DAVID L. ANDERSON (CABN 149604)
United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

MARISSA HARRIS (NYBN 4763025)
Assistant United States Attorney

    150 Almaden Boulevard, Suite 900
    San Jose, California 95113
    Telephone: (408) 535-5061
    FAX: (408) 535-5066
    marissa.harris@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> XIAOLANG ZHANG, <br><br> Defendant. | No: CR 18-00312 EJD <br><br> UNITED STATES' MOTION FOR REVOCATION OF ORDER REMOVING LOCATION MONITORING AS A CONDITION OF RELEASE <br><br> Hearing Date: December 2, 2019 <br> Hearing Time: 1:30 PM |

The United States of America, by and through its counsel of record, hereby files this motion to revoke Magistrate Judge Virginia DeMarchi's order granting the request of Pretrial Services to remove location monitoring as a condition of release for defendant Xiaolang Zhang. Zhang is charged in a one count indictment with Theft of Trade Secrets, in violation of 18 U.S.C. § 1832(a)(1). All parties, including the magistrate court, have recognized that Zhang is a significant flight risk. The question for this Court is whether he should remain on location monitoring to protect the United States' significant interest in holding him accountable for his theft of Apple's trade secrets and valuable intellectual property. As discussed below, the government has proved by preponderance of the evidence that Zhang is a serious flight risk and location monitoring provides reasonable mitigation of that risk and contemporaneous warning of any further attempts to flee from justice.

## I. FACTS AND PROCEDURAL HISTORY

Zhang was indicted in 2018 for Theft of Trade Secrets, in violation of 18 U.S.C. § 1832(a)(1). Zhang was previously employed as a hardware engineer at Apple, the corporate victim in this case. Zhang was hired around December 7, 2015 as an engineer on one of Apple's proprietary projects. In April 2018, Zhang took paternity leave following the birth of his child pursuant to Apple's employee leave policy. While on paternity leave, Zhang traveled with his family to China. On April 30, 2018, shortly after returning from China, Zhang met with his immediate supervisor at Apple and explained that he would be resigning to move back to China in order to be closer to his mother. However, as the meeting progressed, Zhang disclosed that he intended to work for a Chinese competitor on the very same technologies that Apple had hired Zhang to develop for them.

Apple launched an internal investigation and subsequently determined that Zhang had downloaded copious amounts of project information from confidential and secured databases to his personal devices and had improperly accessed Apple's laboratory spaces while on leave. Zhang had a high level of access within Apple at the time he downloaded this information, which contained confidential trade secrets and intellectual property. Zhang was terminated from Apple effective May 5, 2018. Two days later, on May 7, 2018, he started working for Apple's Chinese competitor.

On June 27, 2018, the government executed search warrants on Zhang's residence in San Jose and on devices seized by Apple during its internal investigations of Zhang. Dozens of electronic devices were recovered from these two searches. On the same date, the FBI interviewed Zhang at his home. Zhang acknowledged that he downloaded a large amount of Apple's proprietary documents to his wife's laptop (which he had already turned over to Apple Security), but claimed that he "definitely did not" transfer any documents beyond his wife's laptop. He claimed that he wanted to keep the proprietary documents for his own study because he liked to learn.

Preliminary review of the recovered devices revealed numerous items of Apple's proprietary, technical, and confidential data. Despite Zhang's assurances that he "definitely did not" transfer any of Apple's materials beyond his wife's computer, agents subsequently located Apple's proprietary data on a separate laptop computer found at the bottom of Zhang's laundry hamper. Agents also found documents containing confidential and proprietary information on Ethernet technology that Zhang

illicitly took from Marvell Technology Group, his past employer.

On Saturday, July 7, 2018, approximately 10 days after the warrants were executed, FBI agents learned that Zhang, a Chinese national, had purchased a last-minute round-trip airline ticket with no co-travelers, departing San Jose, California on July 7, 2018 and traveling to Beijing, China with a final destination of Hangzhou, China, aboard Hainan Airlines. Agents intercepted Zhang at the San Jose International Airport after he had passed through the security checkpoint of Terminal B, where he was arrested by federal agents without incident. His wife was interviewed at the airport and claimed that Zhang was travelling to China to visit his sick grandfather and reunite with his infant son, who was in China at the time with her relatives. She disclosed that Zhang suffered "anxiety and depression" after the FBI's search of their residence and drove to Canada "out of nervousness" but returned to the United States a short time later.

A complaint charging a single violation of 18 U.S.C. § 1832(a)(1) was signed by Magistrate Judge DeMarchi on July 9, 2018, and Zhang was arraigned on the same day. On July 10, 2018, Zhang was released from custody on a $300,000 bond, secured by real property and $10,000 in cash. Other conditions of release included pretrial supervision, a travel restriction to the Northern District of California, surrender of Zhang's passports, and GPS monitoring to ensure compliance with location restrictions.

On September 30, 2019, Pretrial Services submitted a request to discontinue GPS location monitoring and Magistrate Judge DeMarchi set a bail review hearing for October 15, 2019. After arguments by both parties, Magistrate Judge DeMarchi issued a ruling removing the location monitoring condition over the government's objection. *See* ECF No. 31.

## II. ARGUMENT

The government respectfully seeks revocation of Magistrate Judge DeMarchi's order removing location monitoring as a condition of release. The government has shown by preponderance of the evidence that the defendant is a serious flight risk and that a combination of conditions that includes GPS location monitoring is the least restrictive means that will reasonably assure his appearance for further proceedings and trial.

///

### A. Legal Standard

The Bail Reform Act of 1984 permits pretrial detention of a defendant without bail where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). Detention is appropriate where a defendant is either a danger to the community or a flight risk; it is not necessary to prove both. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). A finding that a defendant is a danger to the community must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f)(2)(B). A finding that a defendant is a flight risk need only be supported by a preponderance of the evidence. *Motamedi*, 767 F.2d at 1406.

If a court determines that a person presents a danger to the community or a flight risk, release may be ordered subject to the least restrictive conditions or combination of conditions that will reasonably assure the appearance of the person as required, and the safety of other persons and the community at large. *See* 18 U.S.C. § 3142 (c)(1)(B); *see also Motamedi*, 767 F.2d at 1405. There are several relevant factors informing the Court's determination of appropriate conditions of release including (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against defendant; (3) the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, and criminal history; and (4) the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release. *See* 18 U.S.C. § 3142(g); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986); *Motamedi*, 767 F.2d at 1407.

"[A] district court's review of a magistrate's detention order is to be conducted without deference to the magistrate's factual findings." *United States v. Koenig*, 912 F.2d 1190, 1192 (9th Cir. 1990). This Court must make its own independent determination regarding the appropriateness of the defendant's release conditions.

### B. Location Monitoring Is A Reasonable Condition Mitigating The Defendant's Risk Of Flight

The government has shown by preponderance of the evidence that Zhang is a flight risk. As discussed above, Zhang is a Chinese national who is only permitted to live and work in the United States

through his work visa.  Most of his family and his wife's family resides in China.  While he and his wife own a home in San Jose, this fungible property is not a deterrent to flight, as it can be managed and sold remotely.

Most alarmingly, Zhang lied to agents during his June 27, 2018 interview, firmly denying that he transferred Apple's proprietary data beyond his wife's computer, even though such materials were later found on a separate laptop computer hidden in his laundry hamper.  He *twice* attempted to flee the United States after being confronted with a potential criminal prosecution.   According to his wife, he attempted to flee to Canada shortly after the search warrant was executed at his home because he was anxious and depressed.  He returned to the United States shortly thereafter, but this is of no moment because only a few days later he tried again.  This second time, he bought a solo plane ticket straight to China—a country that does not allow the extradition of its own nationals.  *See* Extradition Law of the People's Republic of China, Order of the President of the People's Republic of China No. 42, art. 8 (effective December 28, 2000) (stating that an extradition request from a foreign state to the People's Republic of China "shall be rejected" if the person sought it a Chinese national), *available at* http://www.unodc.org/res/cld/document/chn/2000/extradition_law_of_the_peoples_republic_of_china_html/China_Extradition_Law_2000.pdf.

This behavior demonstrates consciousness of guilt, fear of prosecution, and the impulse to flee to avoid negative criminal outcomes.  It is unfortunately similar to recent behavior of other white collar defendants charged in this district who have sabotaged their criminal prosecutions by leaving the United States on the eve of indictment or trial.  For example, in November 2018, Christian Stukenbrock fled the United States one day before his scheduled trial for multiple counts of wire fraud.  *United States v. Christian Stukenbrock*, 15-CR-00034-EJD (N.D. Cal. Nov. 26, 2018) (order issuing bench warrant after Stukenbrock failed to appear for trial).  According to an email read into the public record and filed with the minute order, Stukenbrock claimed that he left the Court's jurisdiction because he "could not take the risks" of trial.  *See id*.  Similarly, Lixiong Chen fled one day before his June 24, 2019 trial on smuggling and trafficking in counterfeit goods.  *See United States v. Lixiong Chen*, 18-CR-00450 JD (N.D. Cal. Jun. 24, 2019) (order issuing bench warrant after Chen failed to appear for trial).  The day before the trial, counsel indicated that Chen would not be present for trial the next day and later

5

MOT. FOR REVOCATION

indicated that Chen would not be present "for the foreseeable future." *See* Mot. for Bond Forfeiture and Judgment Against Defendant at 3, *United States v. Lixiong Chen*, 18-CR-00450 JD (N.D. Cal. 2019) (quoting Transcript of Proceedings for June 24, 2019). As in these other cases, should Zhang flee to China, the government has no recourse to recover him.

Pursuant to 18 U.S.C. § 3142(g), location monitoring in addition to Zhang's secured bond are the least restrictive combination of conditions that will reasonably assure his appearance for further proceedings and his compliance with the travel restrictions imposed by his bond. Courts have recognized the effectiveness of location monitoring in mitigating a defendant's risk of flight. In *United States v. Obrien*, the First Circuit evaluated the available evidence about the effectiveness of location monitoring, a new technology at the time, and concluded that an electronic monitoring bracelet combined with other release conditions, including a secured bond and surety, sufficed to rebut a presumption against pretrial release for a defendant charged with narcotics offenses. 895 F.2d 810, 815-16 (1st Cir. 1990). Similarly, in *United States v. Demmler*, the Honorable Algenon Marbley of the Southern District of Ohio found that electronic monitoring would "adequately alert law enforcement" if the defendant attempted to flee. 523 F.Supp.2d 677, 684 (S.D. Ohio 2007). Judge Marbley acknowledged that the technology may not be "one-hundred percent effective in all cases" and could potentially be evaded, but nonetheless concluded that it would "provide a sufficient additional safeguard against [the defendant's] attempts to elude this Court's jurisdiction." *See id*. In our own district, the Honorable Beth L. Freeman found that location monitoring imposed alongside an unsecured $200,000 bond signed by sureties militated against a defendant's risk of flight in a VICAR murder prosecution. *United States v. Alegre*, 18-CR-00466 BLF at 5-6 (N.D. Cal. Oct. 22, 2018) (order denying government's motion for revocation of pretrial release order).

Taken together, these cases indicate that location monitoring, in combination with other stringent release conditions, mitigates a defendant's risk of flight and acts as a reasonable preventative measure. Accordingly, the Court should continue location monitoring of this defendant to protect against efforts to evade prosecution or flee this Court's jurisdiction.

The government has an overwhelming interest in prosecuting this defendant and the case against him is very strong. Trade secret theft is a serious economic threat in the Northern District of California,

whose high concentration of well-known technology companies in Silicon Valley makes it a very attractive target for competitors and foreign governments seeking to sidestep high development costs for profitable technologies by simply stealing and copying the progress made by local innovators, like Apple.  *See, e.g.*, Zach Dorfman, *How Silicon Valley Became a Den of Spies*, POLITICO, July 27, 2018, *available at* https://www.politico.com/magazine/story/2018/07/27/silicon-valley-spies-china-russia-219071.  Both the U.S. Attorney for the Northern District of California and the local FBI Special Agent in Charge have acknowledged the extraordinary harms to Bay Area technology firms caused by theft of their technological "crown jewels."  *See* Press Release, U.S. Attorney's Office for the Northern District of California, Former Uber Self-Driving Car Executive Indicted For Alleged Theft Of Trade Secrets From Google (Aug. 27, 2019), *available at* https://www.justice.gov/usao-ndca/pr/former-uber-self-driving-car-executive-indicted-alleged-theft-trade-secrets-google; Press Conference with David L. Anderson and John F. Bennett in San Jose, Cal. (August 27, 2019), *available at* https://sanfrancisco.cbslocal.com/video/4154010-trade-secrets-us-attorney-david-anderson-fbis-john-bennett-defense-attorney-miles-ehrlich-on-anthony-levandowski-indictment.  In addition to the losses suffered by the firms themselves, these thefts also negatively impact the employees who derive their livelihood from the competitiveness of these firms, causing further harm to the local and state economy.

The government is therefore concerned about statements made by Pretrial Services at the October 15, 2019 hearing in this case suggesting that its location monitoring resources are better spent on other types of federal defendants.  It is true that Zhang is not charged with VICAR murder as Alegre was (see above).  However, the government has an obligation to forcefully advocate for a victim's right to be made whole and must preserve its ability to prosecute the offenders targeting those victims.  That obligation is no less urgent in this case than it is in other victim cases.  As discussed below, Pretrial Services' reluctance to expend resources is not a compelling reason to subject the government's prosecution to a significant increase in risk, nor have additional facts been presented justifying any change to the successful status quo.

### C. There Is No Material Change In Facts Supporting Removal Of Location Monitoring

Pursuant to 18 U.S.C. § 3142(f), a detention hearing may be reopened "if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a

7

MOT. FOR REVOCATION

material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f). Based on the government's initial proffer, Zhang was released on a $300,000 secured bond and location monitoring—imposed based on the recognition that both the defendant's underlying conduct and his behavior when confronted with that conduct indicate that he poses a significant flight risk. None of the facts underlying that assessment have changed since the defendant's release in July 2018. The defendant never appealed that determination and never complained about it until Pretrial Services asked to discontinue location monitoring.

The only thing that has changed is the willingness of Pretrial Services to administer the defendant's location monitoring. This does not constitute new "material" information casting doubt on the magistrate court's initial imposition of location monitoring as a condition of release. Courts have rejected similar attempts to discontinue location monitoring based on physical discomfort and inconvenience. For example, in *United States v. Williams*, the Honorable James Mahan of the District of Nevada wrote:

> The court finds that the electronic ankle monitor is, at worst, a minor inconvenience to defendant. Defendant has not put forth any arguments as to how the electronic monitoring has restricted or restrained him beyond ensuring compliance with the other conditions of his release. So long as Mr. Williams complies with those conditions, the monitor does not further restrict his activities. Further, Mr. Williams has not suggested a less restrictive condition with which to incentivize his compliance with his responsibility to appear. He simply argues it is not necessary. His appearances at prior proceedings, *while* wearing the ankle monitor, do not convince the court that he is suddenly not a flight risk *without* the ankle monitor.

2015 WL 9595403 at *3 (D. Nev. Dec. 31, 2015) (emphasis in original) (footnote omitted).

In *United States v. Sanchez*, the Honorable James Browning of the District of New Mexico found that skin irritation caused by the ankle monitor was an insufficient basis to discontinue its use. 2014 U.S. Dist. LEXIS 94126 at *3-4, *28 (D.N.M. June 26, 2014). Judge Browning also rejected arguments that the defendant's five-month compliance with release conditions obviated the need for the device, finding monitoring "necessary to reduce the risk of flight to acceptable levels." *See id*. at *6, *28. Judge Browning did, however, grant the defendant's request to temporarily remove the device so that he could be baptized.[1] *Id*. at *28.

---

[1] The government is happy to work with the defendant and Pretrial Services should any similar issue arise in this case.

MOT. FOR REVOCATION
8

At the October 15, 2019 hearing in this case, Zhang argued that the location monitoring device is unnecessary and excessive, but failed to provide credible information showing anything other than minor irritation and inconvenience caused by the device. He also cited his compliance, so far, with release conditions, but this only validates the current measures and supports their continued appropriateness. Recognizing the folly of discontinuing preventative measures *because of their success*, Supreme Court Justice Ruth Bader Ginsburg compared such logic with "throwing away your umbrella in a rainstorm because you are not getting wet." *See Shelby Cty. v. Holder*, 570 U.S. 529, 590 (2013) (Ginsburg, J., dissenting).

Moreover, the location monitoring condition was one of the most significant preconditions for the lack of government opposition to Zhang's release. *Cf. Sanchez*, 2014 U.S. Dist. LEXIS 94126 at *7-8. The government considered appealing Magistrate Judge DeMarchi's initial release determination to this Court, but ultimately accepted the release order because GPS location monitoring would at least ensure the defendant's compliance with travel restrictions and provide contemporaneous notification of any attempts to tamper with the device or leave the Northern District of California. This, in the government's view, sufficiently mitigated Zhang's flight risk to "acceptable levels." *See id*. at *28.

Now, Pretrial Services and the magistrate court seek to completely change the variables in the flight risk equation. While the government understands that Pretrial Services expends resources to continuously monitor the defendant's location, it pales in comparison to the resources expended by the government to investigate and prosecute this case. If Zhang were to flee to China, the government would have no means to recover these losses—to say nothing of the restitution due to the victim. The importance of location monitoring to the government's assessment of this defendant's level of flight risk cannot be understated. In fact, the Sixth Circuit found that removal of location monitoring caused such a material increase in a defendant's risk of flight that it invalidated the obligation of a surety who was not properly advised of the change. *United States v. Mohammed-Ali*, 822 F.3d 312, 315 (6th Cir. 2016). This is a profound change that raises the flight risk to intolerable levels.

It bears repeating that the government is not seeking detention through this appeal—merely the continuance of location monitoring to secure its ability to prosecute this defendant and vindicate the victim's significant interest in restitution. The government also does not oppose removal of the

9

MOT. FOR REVOCATION

defendant's curfew. The government merely seeks to ensure Zhang's compliance with location restrictions requiring his continued presence in the Northern District of California. This is a modest request that is narrowly tailored to mitigate the risk posed by this defendant's release—risks that are entirely borne by the government and the victim. Indeed, the total value of Zhang's bond is only a small fraction of the development costs expended by Apple to develop the confidential technologies at issue in this case. Accordingly, the Court should grant the government's motion, revoke the magistrate court's order, and continue location monitoring for this defendant.

### III. CONCLUSION

For the reasons articulated above, the government respectfully requests that the Court revoke the magistrate court's order granting the request of Pretrial Services to remove location monitoring as a condition of release. This defendant is a foreign national with few ties to this district. He has previously lied to investigators and *twice* attempted to flee the United States only days after being confronted with the possibility of criminal prosecution for his apparent theft of Apple's valuable trade secrets. Had the government not intercepted him, he would have fled to a non-extradition nation. He is a demonstrated flight risk and should remain on location monitoring pending trial.

DATED: October 29, 2019              Respectfully submitted,

                                              DAVID. L. ANDERSON
                                              United States Attorney

                                              /s/
                                              MARISSA HARRIS
                                              Assistant United States Attorney

MOT. FOR REVOCATION