ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

MARISSA HARRIS (NYBN 4763025)
Assistant United States Attorney

150 Almaden Boulevard, Suite 900
San Jose, California 95113
Telephone: (408) 535-5061
FAX: (408) 535-5066
marissa.harris@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>XIAOLANG ZHANG,<br><br>    Defendant. | NO. 18-CR-00312 EJD<br><br>**UNITED STATES' SENTENCING MEMORANDUM**<br><br>Judge: Hon. Edward J. Davila<br>Date: February 5, 2024<br>Time: 1:30 p.m. |

Plaintiff, United States of America, by and through its undersigned counsel, hereby submits its position regarding the sentencing of the defendant, Xiaolang Zhang.  The government's position is based on its investigation, the Presentence Report (PSR), the files and records of this case, and any arguments or testimony to be presented at the sentencing hearing.  For the reasons detailed below, the government recommends a total sentence of 12 months and one day, three years of supervised release, restitution and forfeiture as agreed in the plea agreement, and a $100 special assessment fee, which is sufficient, but not greater than necessary, to meet the goals of sentencing expressed in 18 U.S.C. § 3553(a).

1  I.    **OFFENSE CONDUCT**

2       On July 12, 2018, Zhang was indicted for Theft of Trade Secrets, in violation of 18 U.S.C. §

3  1832(a)(1).  Zhang was previously employed as a hardware engineer at Apple, the corporate victim in

4  this case.  Zhang was hired around December 7, 2015 as an engineer on one of Apple's proprietary

5  projects involving autonomous vehicles.  In April 2018, Zhang took paternity leave following the birth

6  of his child pursuant to Apple's employee leave policy.  While on paternity leave, Zhang traveled with

7  his family to China.  On April 30, 2018, shortly after returning from China, Zhang met with his

8  immediate supervisor at Apple and resigned, explaining that he wanted to move back to China to be

9  closer to his mother.  However, as the meeting progressed, Zhang disclosed that he intended to work for

10 a Chinese competitor on the very same technologies that Apple had hired Zhang to develop for them.

11      Apple launched an internal investigation and subsequently determined that Zhang had

12 downloaded copious amounts of information from confidential and secured databases to his personal

13 devices and had improperly accessed Apple's laboratory spaces while on leave.  Zhang had a high level

14 of access within Apple at the time he downloaded this information, which contained confidential trade

15 secrets and intellectual property.  One of the items Zhang downloaded was a 25-page document

16 containing electrical schematics for a circuit board within Apple's proprietary infrastructure technology

17 for the autonomous vehicle project.  This document included a notice warning Zhang that the

18 information contained therein was Apple's proprietary intellectual property and that it should be kept

19 confidential and not reproduced, copied, published, or revealed in whole or in part.  Apple later

20 estimated that Zhang could have caused approximately $400,279 in loss to the company based on the

21 illegal disclosure of the proprietary technologies contained in this one document alone.  To be clear,

22 Zhang illegally downloaded over 40 gigabytes of data in his final days at Apple.  Two days after leaving

23 the company, he started working for X-Motors, Apple's Chinese competitor.

24      On June 27, 2018, the government executed search warrants on Zhang's residence in San Jose

25 and on devices seized by Apple during its internal investigations of Zhang.  Dozens of electronic devices

26 were recovered.  On the same date, the FBI interviewed Zhang at his home.  Zhang acknowledged that

27 he had downloaded a large amount of Apple's proprietary documents to his wife's laptop (which he had

28 already turned over to Apple Security) but claimed that he "definitely did not" transfer any documents

beyond his wife's laptop.  He claimed that he wanted to keep the proprietary documents for his own study because he liked to learn.

Review of the seized devices revealed numerous items of Apple's proprietary, technical, and confidential data.  Despite Zhang's assurances that he "definitely did not" transfer any of Apple's materials beyond his wife's computer, agents subsequently located Apple's proprietary data on a separate laptop computer found at the bottom of Zhang's laundry hamper.  Agents also found documents containing confidential and proprietary information on Ethernet technology that Zhang illicitly took from Marvell Technology Group, his past employer.

On Saturday, July 7, 2018, approximately 10 days after the warrants were executed, FBI agents learned that Zhang, a Chinese national, had purchased a last-minute round-trip airline ticket with no co-travelers, departing San Jose, California on July 7, 2018 and traveling to Beijing, China with a final destination of Hangzhou, China, aboard Hainan Airlines.  Agents intercepted Zhang at the San Jose International Airport after he had passed through the security checkpoint of Terminal B, where he was arrested by federal agents without incident.  His wife was interviewed at the airport and claimed that Zhang was travelling to China to visit his sick grandfather and reunite with his infant son, who was in China at the time with her relatives.  She disclosed that Zhang suffered "anxiety and depression" after the FBI's search of their residence and drove to Canada "out of nervousness" but returned to the United States a short time later.

Zhang pleaded guilty to the one-count Indictment on August 22, 2022.  He is scheduled to be sentenced by the Honorable Edward Davila on February 5, 2024.

## II.   SENTENCING GUIDELINES CALCULATIONS

The government has reviewed the Presentence Report provided by Probation Officer Cindy Suntay.  According to the PSR, Zhang has a total offense level of 15[1] and falls into Criminal History Category I.  *See* PSR ¶¶ 24-33.  The applicable guidelines range is 18-24 months.  PSR ¶ 60.  The

---

[1] Zhang's plea agreement has an agreed offense level of 17, however the agreement was executed prior to the November 2023 amendments to the U.S. Sentencing Guidelines, which now include a two-level departure for certain offenders with zero criminal history points.  *See* USSG § 4C1.1 (amended 2023).

government has no unresolved objections to the final PSR and has submitted a victim impact statement for the Court's review.

### III.    SENTENCING RECOMMENDATION

The government believes that a sentence of imprisonment for 12 months and one day, three years of supervised release, restitution and forfeiture as agreed in the plea agreement, and a $100 special assessment fee meets the goals of sentencing expressed in 18 U.S.C. § 3553(a).  Among the many factors to consider are the nature and circumstances of the offense, the history and characteristics of the defendant, and the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, provide adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant.  *See* 18 U.S.C. §§ 3553(a)(1)-(2).  The government's recommended sentence serves each of these goals.

The government has an overwhelming interest in preventing the theft of trade secrets.  Federal law offers both criminal and civil measures to protect American companies' technological "crown jewels."  Trade secret theft is a particularly serious economic threat in the Northern District of California, whose high concentration of technology companies makes it a very attractive target for competitors and foreign governments seeking to sidestep high development costs by simply stealing and copying the progress made by local innovators, like Apple.  In addition to the losses suffered by the firms themselves, these thefts also negatively impact employees who derive their livelihood from the competitiveness of the affected firms.  This includes engineers and developers, whose time and talent are key drivers of progress.

In this case, Zhang agreed to treat Apple's proprietary information with the utmost care and discretion as a condition of his access to the company's protected materials, databases, and laboratory spaces.  Zhang received secrecy training and signed non-disclosure agreements obligating him not to access or copy Apple's proprietary information beyond the strict scope of his employment.  Instead, Zhang abused his position of trust to amass a large compilation of highly confidential and protected documents and data two days before leaving Apple to work for its direct competitor.  In the wrong hands, this stolen information could have significantly disadvantaged Apple by conveying Apple's autonomous vehicle research, developments, and strategies to other companies at Apple's expense.

A key objective of this prosecution is to deter other trusted employees from stealing their company's trade secrets.  The sentence imposed by the Court should communicate the seriousness of an employee's secrecy commitments once they are voluntarily undertaken and the damage to companies and industries that flows from the violation of those commitments.  This district cannot remain technologically competitive unless the laws designed to protect profitable ideas from usurpation are rigorously enforced.

Zhang has no prior criminal history and has generally been compliant with pretrial release conditions.  The government was alarmed by Zhang's abusive behavior toward his wife in August 2023.  *See* ECF No. 82.  However, the government understands from Ms. Shi that the incident has been resolved to her satisfaction.  Zhang's acceptance of responsibility and general compliance with release conditions, along with other relevant factors, justify a modest departure from Zhang's applicable guidelines range.  Accordingly, the government joins probation in recommending imprisonment for 12 months and one day, three years of supervised release, restitution and forfeiture as provided in the plea agreement, and a $100 special assessment fee as a reasonable and just sentence in this case.  The government has reviewed the supervised release conditions proposed in the PSR and agrees that they are reasonable and necessary for rehabilitation and effective supervision.

IV.    **CONCLUSION**

The government respectfully requests that the Court impose the recommended sentence and proposed supervised release conditions as a sufficient, but not greater than necessary, to meet the goals of sentencing.

DATED:  January 29, 2024                                    Respectfully submitted,

ISMAIL J. RAMSEY
United States Attorney

_____
       /s/
MARISSA HARRIS
Assistant United States Attorney